UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **MEMORANDUM & ORDER** |
| -against- | **18-CR-33 (S-2) (NGG)** |
| MATTHEW ELIAS and LATIFF THOMPSON, | |
| Defendants. | |

NICHOLAS G. GARAUFIS, United States District Judge.

The United States and Defendants Matthew Elias and Latiff Thompson have all submitted motions *in limine* to the court seeking evidentiary rulings ahead of the upcoming trial in this case, scheduled for jury selection on March 14, 2022.

The court's rulings are as follows:

## I.   THE GOVERNMENT'S MOTIONS

The government moves (A) to admit evidence of certain uncharged crimes and other acts; (B) to admit certain co-conspirator statements; (C) to cross-examine Defendants as to their criminal history; (D) to preclude Defendants from introducing their own hearsay statements; (E) to admit certain post-arrest statements made by Thompson; and (F) to admit various business and official records. (*See* Gov't Mot. (Dkt. 597).)

### A.   Uncharged Crimes and Other Acts

The government moves to admit evidence of Defendants' alleged gang ties; evidence of the vehicle stop, arrests, and detention that led to this case; and evidence of certain of Defendants' post-arrest "bad act" conduct.

#### 1.   The Applicability of Rule 404(b)

As a threshold matter, the government argues that the evidence it seeks to admit related to uncharged and "bad act" conduct is

not subject to Fed. R. Evid. 404(b) analysis at all, because such evidence arises "out of the same transaction or series of transactions as the charged offense . . . is inextricably intertwined with the evidence regarding the charged offense, or . . . is necessary to complete the story of the crime on trial." *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012).

For some of the evidence, the court agrees. As described below, the evidence of the car stop, arrests, and detention are "inextricably intertwined" with the evidence of the charged crimes, even if at the time of the stop the New York City Police Department officers conducting it were unaware of the allegedly just-committed robbery. The "transaction" itself was plainly still occurring: Defendants were then fleeing the scene. Likewise for the Rikers calls discussing Defendants' plans to monetize, divide, and make use of the proceeds of the robbery: those activities are not "other crimes, wrongs, or acts" under the Rule, but rather part and parcel of the very crimes charged. Fed. R. Evid. 404(b); *see United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000).

As to evidence concerning gang affiliations and a later plot to burn a car the government concedes was not the same one used to conduct the robbery, described below, the court concludes that the usual Rule 404(b) analysis applies. Although the Second Circuit has permitted district courts to admit loosely related "background" evidence in the context of a conspiracy, *see, e.g., United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991), *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988), there is no such conspiracy charge in this case. It is, quite simply, easy to extract evidence of both Defendants' gang ties and the arson plot without at all affecting the jury's understanding of the crimes charged. The information is not "necessary to understand" them. *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007).

### 2.   Rule 404(b) Analysis

Alternatively, the government argues that the same evidence is admissible under Rule 404(b) consistent with the Second Circuit's "inclusionary" approach to the Rule. *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). It primarily contends that such evidence may be admitted for the permissible purposes of explaining the relationship between Defendants and the others who committed the charged crimes, as well as corroborating its cooperating witness's testimony.

### a.   *Evidence of Gang Affiliations*

First, the government expects to introduce: testimony by a cooperating witness that the robbery charged was part of a series that the Makk Balla gang carried out in 2017; testimony that Thompson was a member of the Blood Hound Brims and affiliated with the Makk Ballas; and social media posts in which Elias represents himself as affiliated with the Makk Ballas. (*See* Gov't Mot. at 11-12.) The government also intends to introduce jail calls and Thompson's post-arrest statement to attest to Elias and Thompson's connections with the members of the "broader conspiracy and racketeering offenses charged." (*Id.* at 12.) Those calls and statements will identify Defendants as members of the Makk Ballas, providing "essential explanation for why they would be asked and trusted to join a middle-of-the-night robbery planned only hours before its commission" and corroborating the credibility of the cooperating witness's testimony. (*Id.*) Finally, the government proposes to use the gang-affiliation evidence to complete a narrative as to "why coconspirators were working to raise money for Thompson's bail and put money into his commissary account." (*Id.* at 13.)

The government relies principally on a handful of cases that emphasize the permissible purpose of establishing "the existence and development of a criminal relationship between co-conspirators." (*Id.* at 10.) It relies on one, *United States v. Everett*, 825 F.2d

658, 660 (2d Cir. 1987), for the proposition that such evidence is permitted to directly corroborate significant testimony.

The court agrees that each of those purposes are permissible under Rule 404(b). But even where the government has stated a non-propensity purpose for the evidence, and even where the evidence is admissible under Rule 401, the court must still ensure that its probative value is not substantially outweighed by the risk of unfair prejudice. *See United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (evidence satisfying Rule 404(b) still subject to balancing under Rule 403).

As to the purpose of demonstrating the participants' relationships, the court concludes that any probative value is outweighed by the risk of unfair prejudice. That is primarily because the relationships themselves have little probative value. All of the cases the government cites involved *charged* conspiracies – not conspiracies in the colloquial sense of the word.[1] In this case, by contrast, the government charges just two substantive counts: Hobbs Act robbery and the use of a firearm to commit that robbery. Defendants are not named in any conspiracy count, and are not charged – unlike most of their co-defendants on the larger indictment – with racketeering. There is therefore no prosecutorial necessity to prove any agreement among conspirators, and their relationships are accordingly less probative of the elements of the crimes that are charged.

A better analysis is *United States v. Jackson*, No. 19-CR-356 (ARR), 2021 WL 62109, at *2 (E.D.N.Y. Jan. 7, 2021). In that case, also arising in the context of alleged Bloods gang affiliates,

---

[1] *See United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) (conspiracy to import cocaine); *United States v. Pipola*, 83 F.3d 556, 559 (2d Cir. 1996) (conspiracy to commit Hobbs Act robbery); *United States v. Rosa*, 11 F.3d 315, 323 (2d Cir. 1993) (four different conspiracy counts); *Pitre*, 960 F.2d at 1115 (conspiracy to distribute and possess with intent to distribute heroin).

the court held evidence of gang membership inadmissible because it was not "directly relevant to the facts at issue" or "relevant to multiple aspects of the case." *Id.* The court found the probative value of the evidence "weak" where the fact to be established could "be easily explained by other factors" besides gang affiliation. *Id.* By contrast the court found "the danger of unfair prejudice [] substantial . . . [because] membership in the Bloods gang, which is notorious for its violence and criminality," was inflammatory. *Id.*

This court similarly finds that that evidence of Defendants' gang ties has little probative value in this case. Although the Defendants' relationships may help explain their motive for committing the crime, "other factors" can easily do that as well. The government may introduce, for example, evidence that speaks to Defendants' financial motives, which Thompson's statements make clear were discussed at length before and after the robbery, when its participants argued over how much they expected to find in the apartment and how the loot should be divided up. The "mere fact" of gang membership offers a comparatively weaker explanation. *Id.*

As to corroboration, *Everett* itself emphasizes that "the prosecution is not permitted to wholesale proof into evidence under the guise of corroboration purposes." *Everett*, 825 F.2d at 660. In order to "avoid potential prosecutorial abuse," the Second Circuit has required that corroborating evidence must be "significant" and must be "directly" corroborative. In *Everett*, the corroborating evidence was "significant" because it "provided important details describing the formation and implementation of the [defendant's] plan to rob" a bank. *Id.* at 660. Nothing of such importance is at issue here. Because the court has already held that the evidence of gang affiliations provides only weak evidence for Defendants' motive in committing the robbery, it

necessarily provides even weaker corroborative value in estab-
lishing the same fact.

Moreover, because there is no conspiracy charged, the question
of why Defendants would be trusted to join the robbery is also of
little probative force; although gang ties may lend some credibil-
ity to the testimony of the government's cooperating witness, that
testimony can also be buttressed by "other factors," including the
simple explanation that the witness was directly involved in the
planning and execution of the robbery, and saw the events
firsthand. When compared with the significant danger of unfair
prejudice that gang affiliations carry, the probative value of the
evidence is substantially outweighed.

The government responds that essentially all "other act" evidence
should come in because none of it is *as inflammatory* as the core
conduct alleged, which includes tying up and beating a person
who occupied the apartment that was robbed. But it is not clear
that those details are themselves admissible. Elias's participation
in the robbery was limited to driving the getaway car, and the
government has not made clear whether Thompson participated
in, or was even aware of, the victim's assault. To the extent that
the government is able to adduce such participation, the court
may revisit its ruling as to the gang affiliation evidence. In the
absence of such proof, the government's motion to admit evi-
dence of Defendants' gang affiliations is DENIED and the
government is barred from otherwise adducing evidence of gang
associations in this case.[2]

---

[2] Although Thompson does not contest the admission of his alleged gang
affiliations, the court concludes that it would be impractical and confusing
to preclude such references as against Elias but not Thompson. (*See*
Thompson Mot. at 5.) Its order therefore extends to both Defendants.

### b. *Evidence of the Car Stop, Arrests, and Detention*

Second, the government moves to admit evidence regarding the circumstances under which Defendants were arrested: after a car stop that was initially unrelated to the robbery but which raised police suspicion and led to the arrests of Elias, Thompson, and two others.[3] The government contends that the stop "completes the narrative as to why Elias and Thompson did not arrive at the second location (where the [cooperating witness] and others were present) to split up the proceeds"; explains Defendants' later jailhouse discussions about the proceeds; and corroborates anticipated testimony. (Gov't Mot. at 13-14.)

Rule 404(b) likely does not apply at all to this evidence; but even if it did, the court agrees that the government's stated purposes do not run afoul of the Rule and satisfy the balance testing imposed by Rule 403.[4] It is simply impossible to separate the circumstances of the initial stop, arrest, and detention with the later federal case. And even if one could separate the two, the circumstances in any event have little potential for unfair prejudice. The government has stipulated that it will not introduce that the New York Police Department recovered a firearm during the stop; the fact that Elias allegedly failed to stop at a stop sign and did not have his headlights properly illuminated is not much of a "bad act"; and there is little prejudicial daylight between Defendants' state arrest on one hand and federal indictment on the other for the same conduct (even if it wasn't immediately clear

---

[3] The other two people in the car were Lawrence Woods and Tyquan Henderson, both of whom pleaded guilty to charges in the same indictment in this case.

[4] Defendant Thompson's motion to preclude evidence of the stop under Rule 403 is therefore DENIED. (*See* Thompson Mot. at 9.) Notwithstanding the likely inapplicability of Rule 404(b), if Defendants request a limiting instruction as to propensity, the court will provide it. The court is satisfied that the government has already provided sufficient notice under the Rule.

to the arresting officers that Defendants may have been involved in the specific robbery).

The government's motion to admit evidence regarding the stop of Elias's car, the arrests of Defendants, and the fact of their subsequent detention is therefore GRANTED.

     *c.*   *The Rikers Calls*

Third, the government moves to admit phone calls made by Thompson, Elias, and Woods while they were held at Rikers Island after their initial arrest on state charges.[5] The discussions principally focus on two subjects: dividing up the proceeds of the robbery and burning a vehicle at Elias's request.

As to the proceeds of the robbery, marijuana and cash, the court agrees with the government that the calls are "direct evidence of the charged offenses" and are not subject to Rule 404(b) analysis. Although Defendants are not charged with selling the marijuana obtained from the robbery, their discussion as to how to monetize and divide up the proceeds of the crime can hardly be separated from the crime itself. Indeed, the conversations are evidence that Defendants committed it.[6]

Discussions about a plan to burn a car, however, are acts that can be easily separated from the robbery, and Rule 404(b) analysis accordingly applies. This conclusion is buttressed by the government's acknowledgment that car Defendants discussed was

---

[5] The state initially brought felon in possession charges related to the gun found at the time of the car stop. When that weapon was suppressed, the state charges were dropped and the United States Attorney's Office later indicted the robbery under the Hobbs Act. It did not bring a felon in possession charge.

[6] Though the evidence is not subject to Rule 404(b), it is still subject to Rule 403, and Defendant Thompson moves to preclude it as unfairly prejudicial. (*See* Thompson Mot. at 8.) That motion is DENIED.

apparently not the same car used to commit the robbery. Although the government has articulated a variety of other non-propensity purposes to introduce the statements – to show the robbery participants' trust in each other, to prove motive, and to corroborate testimony of a cooperating witness – the court has already held that those same purposes were substantially outweighed by the risk of unfair prejudice when it came to evidence of gang affiliations. The same reasoning applies to the uncharged plot to burn a vehicle unrelated to the robbery. To quote the government's argument is to decide against it: it says that it "only intends to argue that Elias asking Henderson to carry out this request [to burn his car] is evidence of their closeness and [the] trust he had in Henderson." (Gov't Mot. at 15.) Plainly, the government could establish that trust with far less unfairly prejudicial evidence.

The government's motion to admit the calls discussing the sale of the robbery's drug proceeds is GRANTED, but its motion to admit conversations about the torching of Elias's car is DENIED and Thompson's opposing Rule 403 motion to exclude it is GRANTED.

### B. Co-Conspirator Statements

The government moves to admit various co-conspirators' statements pursuant to Rule 801(d)(2)(E). It intends to introduce statements from a cooperating witness regarding the apartment robbed; text messages from Thompson's phone; statements made by co-conspirators in the course of the robbery and afterward; statements concerning the police stop; and statements concerning the monetization and division of the proceeds of the robbery. (*See* Gov't Mot. at 17.)

The court agrees that these categories of evidence, as the government describes them, likely satisfy Rule 801(d)(2)(E). It concludes in particular that a "joint enterprise" existed, notwithstanding the fact that a conspiracy was not charged, and that

both Defendants were a part of it. *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968). But the court declines to resolve any particular evidentiary admission until trial, when the government will also be required to establish that any given declarant was a member of the joint enterprise and the statement in question was made in furtherance of the joint enterprise.

Therefore decision on the government's motion to admit certain categories of co-conspirator statements is RESERVED.

### C.  Defendants' Criminal Histories

The government moves to be permitted to cross-examine Defendants about their criminal histories should either choose to testify at trial. In particular, the government moves to admit a 2016 felony conviction of Thompson's and a 2010 felony conviction of Elias's.

Rule 609 requires the admission of a prior conviction if "the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). Where the conviction is greater than ten years old, evidence of the conviction is admissibly only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

In assessing a conviction's probative value, the Second Circuit has adopted the *Gordon* factors weighing "(1) The nature of the crime; (2) The time of conviction; (3) The similarity between the past crime and the charged crime; (4) The importance of defendant's testimony; [and] (5) The centrality of the credibility issue." *United States v. Hawley*, 554 F.2d 50, 53 (2d Cir. 1977).

#### 1.  Thompson's 2016 Conviction

The government seeks to admit a 2016 conviction after Thompson pleaded guilty to "attempted making/possessing dangerous contraband in prison, a felony." (Gov't Mot. at 21.) Weighing the

*Gordon* factors, the court agrees with Thompson that the conviction should be excluded.

The first *Gordon* factor considers the "nature of the crime," emphasizing that past convictions involving dishonesty are most probative for untruthfulness. Crimes of violence, in this analysis, are generally less probative because they "may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bearing on honesty and veracity." *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967). The government claims that Thompson's conviction possessing dangerous contraband "inherently exhibits a willingness to break the rules and to operate in a furtive and evasive manner" because it occurred in the context of his incarceration. (Gov't Mot. at 24.) Thompson responds that "[p]ossession of an instrument of self-defense, even a contraband one, in a notoriously unsafe prison is not an act of dishonesty." (Thompson Mot. (Dkt. 601) at 10.) The court agrees that there is little that has directly to do with the deception of others in a possession crime.[7] Moreover, there is nothing in the "nature" of the possession of a makeshift weapon in prison – itself a "provocative" place – that involves concealment; indeed, the weapon may have been wielded openly, a possibility not entirely unlikely given the chaotic reality of contraband in BOP facilities. *See generally* Review of the Federal Bureau of Prisons' Contraband Interdiction Efforts, U.S. Department of Justice Inspector General Report (2016). Finally, the conviction (like all of Thompson's previous

---

[7] Although this court has looked to the gravity of a crime to assess a defendant's "willingness to ignore the law," *United States v. White*, No. 08-CR-0682(NGG), 2009 WL 4730234, at *4 (E.D.N.Y. Dec. 4, 2009), distinguishing between crimes "result[ing] from planning or premeditation, rather than anger or impulse," *id.*, the distinction has little meaning in the possession context – and it cannot be that breaking the law itself is a useful means of distinguishing *among crimes*, the purpose of the first *Gordon* factor.

convictions) was the result of a guilty plea, rather than a conviction after trial – a factor that cuts in favor of Thompson's veracity and against the conviction's admission. *See Gordon*, 383 F.2d at 940 n.8. The first part of the *Gordon* analysis, then, tilts in Thompson's favor.

The second *Gordon* factor considers the time of the conviction and the defendant's history subsequent to that conviction. *See Gordon*, 383 F.2d at 940. Because the governing standard becomes more stringent in Rule 609(b) for convictions older than ten years, the court should evaluate remoteness within the ten-year timeframe for the purpose of Rule 609(a)(1)(B). By that measure, the conviction is moderately remote: six years in the past. Moreover, according to the government's submission, Thompson has not had any convictions since – a factor that also weighs against admission.[8] Those two facts combined tip the second *Gordon* factor against admission as well.

The third *Gordon* factor considers the similarity between the earlier conviction and the charged crime, reasoning that greater similarity counsels against admission. *See id.* The government contends that the crimes are dissimilar, because "[a]lthough both sets of offenses involve weapons possession, the 2016 offense had no apparent connection to any robberies or property crimes." (Gov't Mot. at 25.) Thompson responds that the two are "strikingly similar" because they were both violent. (Thompson Mot. at 11.) On this factor, the circumstances cut both ways. The conviction the government seeks to admit is Thompson's most recent (of four), and each of his three other prior convictions (for theft, assault with a dangerous weapon, and attempted robbery) are more similar to the crime charged in this case. But the 2016 conviction also inherently reveals an earlier conviction as well

---

[8] It is of little moment that Thompson was incarcerated for parts of that period because, as the very conviction in question demonstrates, criminal charges are frequently brought against people who are imprisoned.

12

(because it by definition occurred in prison), and the court's obligation is to evaluate the similarity between the prior conviction and the current charge – not just ensure that the government choose the least prejudicial option available among multiple possibilities (where they exist). Given these considerations, the third *Gordon* factor neither clearly favors the government nor Thompson.

The fourth and fifth *Gordon* factors require the court to weigh the importance of the defendant's testimony and the centrality of the defendant's credibility. Combining these two together, the government claims that "whenever a defendant testifies," "his credibility becomes central to the jury's determination of the case," and so the final *Gordon* favors favor the government. (Gov't Mot. at 25.) That, however, combines two factors that point in opposite directions. Properly analyzed, the *more* important the defendant's testimony relative to other evidence – in the sense that, without it, the defense's story has little other means of being advanced – the *less* willing a court should be to admit evidence of a prior conviction. *See Gordon*, 383 F.2d at 940 (a judge "may . . . conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment").[9] Conversely, the more important the defendant's credibility, the more willing a court should be to admit a prior conviction. *See* Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 6.31

---

[9] Courts have routinely gotten this analysis backward, including (confessedly) this one. *See, e.g.*, *United States v. White*, 312 F. Supp. 3d 355, 363 (E.D.N.Y. 2018) (WFK) (incorrectly applying the fifth factor); *United States v. White*, No. 08-CR-0682 (NGG), 2009 WL 4730234, at *4 n.3 (E.D.N.Y. Dec. 4, 2009) (incorrectly applying the fifth factor); *but see United States v. Brown*, No. 07-CR-874 (KAM), 2009 WL 728448, at *5 n.5 (E.D.N.Y. Mar. 10, 2009) (correctly applying the fifth factor) (citing *United States v. Costa*, 425 F.2d 950, 954 (2d Cir. 1969) (Friendly, J.), *cert. denied*, 398 U.S. 938 (1979)). Of course, the other *Gordon* factors could ultimately outweigh this one.

(5th ed. 2012). It cannot be, then, that "[w]henever a defendant testifies" their credibility is central, because *all* applications of Rule 609(a)(1)(B) by definition involve a defendant testifying. Rather, credibility is central when, for example, the charged crime itself involves *crimen falsi*, like perjury or fraud, or the defendant's credibility is otherwise at the heart of a case for factual reasons, as when the issues for trial have been "narrowed" to the question of credibility. *See Gordon*, 383 F.2d at 941. In this case, however, there is nothing to suggest either that Thompson's testimony is especially important or that his credibility is particularly central. Thompson has given no indication that he will testify or, if he does, that he will provide information that cannot be adduced through other means. Nor is there reason, at this stage, to believe that Thompson's credibility is "central" to the case. Therefore the fourth *Gordon* factor cuts in favor of the government, and the fifth in favor of Thompson.

Of course, these factors are not meant to be simply totted up, with points given to each side. The factors must be considered together in light of Rule 609(a)(1)'s overall purpose to provide "strong protection for criminal defendants" by adopting a standard that "favors excluding rather than admitting." Mueller & Kirkpatrick, *supra*, § 6.31. Because the court concludes that its analysis of the *Gordon* factors favors exclusion, the government's motion to cross-examine Thompson with his prior conviction is DENIED.

### 2.   Elias's 2010 Conviction

Much the same reasoning applies to the prior conviction the government seeks to admit against Elias, but the analysis weighs even more heavily against admission. The court applies the same *Gordon* factors to assess the probative value of introducing the conviction, but under Rule 609(b), the evidence "is admissible *only if* its probative value, supported by specific facts and circumstances, *substantially outweighs* its prejudicial effect." Fed. R.

Evid. 609(b) (emphasis added). The rule, in other words, adopts a strong presumption of exclusion.

In this case, there is little reason to conclude that the probative value of Elias's past conviction "substantially outweighs" its prejudicial effect. Although the nature of the prior crime (attempted robbery) favors admission, its remoteness (22 years ago, and followed by only one other conviction, now also 20 years old), similarity to the charged crime (both robberies), and the fact that it was the result of a plea rather than guilty verdict all strongly weigh against admission. As with Thompson, there is no reason to think that Elias's testimony is especially important or his credibility central to the case. So it is only his relatively unimportant testimony (a factor that does little for the government) and the nature of the prior crime that favor admission. To all of this, the government's only regrettable reply is that the fact Elias was incarcerated for "more than ten of the past twenty years" means that "the passage of time does not accurately reflect a change in the defendant's behavior or indicate that he has conformed to a more law-abiding life." (Gov't Mot. at 27.) But there are, of course, laws to abide in prison – as the government itself pointed out when it came to Thompson – and the "passage of time" there is, at least by this court's lights, intended to ensure some measure of rehabilitation. Sometimes it even achieves it. One would think the government might agree that time still counts.

The court concludes that the *Gordon* analysis strongly favors Elias, and the government cannot meet the heavy standard Rule 609(b) imposes. Its motion to introduce Elias's past conviction – and by extension, for the same reasons, his parole history – is therefore DENIED.

### D.   Defendants' Hearsay Statements

The government moves to preclude Defendants from introducing their own prior statements for their truth, arguing that those statements would constitute hearsay.

The court agrees, but only to the extent that Defendants decline to testify. If they testify and subject themselves to cross-examination, exceptions may apply or else the statements may not be hearsay. *See, e.g.*, Fed. R. Evid. 801(d)(1). The court will therefore rule on these questions as they arise, and decision on the government's motion is RESERVED.

### E.   Thompson's Statements to the FBI

The government moves to admit a variety of post-arrest statements made by Thompson during an FBI interrogation.[10] It proposes to admit the statements only as against Thompson, replacing Elias's name with neutral pronouns wherever the statements implicate Elias. It has undertaken a similar protocol with regard to the same statements as recorded on video, except that the video entirely omits references to Elias. Presumably, the court would also deliver a limiting instruction to the jury that the statements should only be considered against Thompson. Replacing Elias's name with neutral pronouns in the transcript and removing references to him in the video, the government argues, is by itself "sufficient" to avoid violating his confrontation clause rights under *Bruton v. United States*. *See* 391 U.S. 123 (1968). (*See* Gov't Mot. at 29-30.)

Elias opposes the government's motion, arguing that the substitution of neutral words in the transcript is insufficient when the replacement words are "so conspicuously awkward that the alteration is obvious." (Elias Mot. at 3 (Dkt. 598) (citing *United States v. Taylor*, 745 F.3d 15, 29 (2d Cir. 2014)).) Elias requests that the court either sever his trial from his co-defendant or else suppress certain portions of Thompson's interrogation. (*Id.* at 4-5.)

---

[10] The court previously rejected a motion to suppress the statements. (*See* Memorandum & Order, July 8, 2021 (Dkt. 516).)

Pending the pre-trial conference scheduled in this case for today, decision on the parties' *Bruton* motions is RESERVED.

### F.   Business and Official Records Certifications

Finally, the government moves to admit records from AT&T, T-Mobile, Sprint, and Enterprise Rental Car as business records, arguing that doing so without also including the testimony of their custodians is permissible where the records have been authenticated and were created in the normal course of business. (*See* Gov't Mot. at 30-32.) Defendants do not contest the government's motion.

The government's motion to admit the records is GRANTED.

## II.   ELIAS'S MOTIONS

Elias moves (A) to preclude certain of Thompson's statements to the FBI in accordance with *Bruton*, or in the alternative for the severance of his trial; (B) to preclude certain of Thompson's jail calls, also in accordance with *Bruton*, or in the alternative for severance; (C) to preclude (1) statements about the plot to burn Elias's car; and (2) evidence of Elias's past conviction and parole history; and (D) to preclude evidence of the firearm found during the initial car stop. (*See* Elias Mot. at 2.)

### A.   Thompson's Statements to the FBI

Elias moves to preclude certain of Thompson's statements to the FBI in accordance with *Bruton*, or in the alternative for the severance of his trial. The court has RESERVED ruling on this motion. *See* Part I.E., *supra*.

### B.   Thompson's Jail Calls

Elias moves to preclude portions of calls Thompson made from Rikers that implicate Elias, arguing that, like Thompson's statements to the FBI, they raise *Bruton* issues. (*See* Elias Mot. at 5.)

The government opposes the motion, arguing that the confrontation clause is not implicated because the statements were not "testimonial." (*See* Gov't Letter of March 8, 2022 (Dkt. 609) at 5.)

The court has RESERVED ruling on the other *Bruton* issues in this case, and does so on this motion as well. *See* Part I.E., *supra*.

### C.  The Plot to Burn Elias's Car and Elias's Criminal History

Elias moves to preclude (1) statements about the plot to burn a car of his; and (2) evidence of Elias's past conviction and parole history. The court has already GRANTED this motion in full. *See* Parts I.A.2.c and I.C.2, *supra*.

### D.  The Firearm Found During the Car Stop

Elias moves to preclude evidence – at least in the form of a jail call, but perhaps adduced from witness testimony as well – tending to establish that a firearm was recovered during the initial stop of Elias's car. In earlier state proceedings, the weapon was suppressed by the Queens County Supreme Court. (*See* Gov't Mot. Ex. A (Dkt. 597-1).) Earlier in these proceedings, Thompson also moved to suppress it, but the court denied the motion as moot after the government represented that it would not introduce evidence from law enforcement that the gun had been found, and instead would rely only on other sources of testimonial evidence to establish that a gun was in the car. (*See* Memorandum & Order, July 8, 2021, at 23.)

Now, citing Rule 402, Elias moves to preclude any reference to the gun on relevancy grounds, arguing that "there is no evidence that Mr. Elias had knowledge a firearm would be used in connection with the alleged robbery." (Elias Mot. at 7.) But even if that was true, it hardly follows that the existence of a gun in the car Elias was driving is not relevant. Quite the opposite: it tends to establish that in fact he may have been aware a gun was used in

connection with the robbery, a key element the government must prove in its case against him. Of course, if it ultimately fails to do so, Elias may move to dismiss Count Four. As a question of relevancy, however, Elias's motion to suppress evidence related to the presence of a firearm in the car he was driving is DENIED.[11]

### E.   Cell Site Evidence

Finally, Elias moves to preclude cell site evidence on the grounds that the FBI Special Agent who apparently will testify about the information is not qualified as an expert to do so. Alternatively, Elias moves to adjourn the trial so that Defendants may identify their own expert. (*See* Thompson Reply (Dkt. 611) at 3.)

The court agrees that, if the government intends to offer cell site location data, it must qualify an expert to testify about the data and comply with all of the relevant rules of evidence and procedure. *See, e.g.*, Fed. R. Evid. 702, 703; Fed. R. Crim. P. 16(a)(1)(G). Nonetheless, even at this late date, the court is not yet prepared to conclude that Defendants have been prejudiced by the government's apparent failure to make disclosures thus far. *See, e.g.*, *United States v. Canada*, 858 F. App'x 436, 439 (2d Cir. 2021) (summary order). Decision on Elias's motion is RESERVED pending today's pre-trial conference.

## III.  THOMPSON'S MOTIONS

Thompson moves (A) to preclude certain recorded jail calls; and (B) to preclude evidence of his prior criminal history.

---

[11] Because the court never ruled on the merits of suppression, the government is strongly warned not to adduce evidence, even from non-law enforcement sources, that *the police* recovered a gun from Elias's car. The only potential evidence on this score cited by Elias, however, are two statements made during a September 21, 2017, jail call that make no reference to the fact that *the police* recovered the gun. (*See* Elias Mot. Ex. C (Dkt. 598-1) ECF pp. 87-88.)

### A.   Vulgar Jail Calls

Thompson moves to preclude "profane and racially charged recorded telephone calls . . . which allegedly capture plans to [] incinerate a vehicle . . . [and] to share in the process of the sale of marijuana stolen" and to preclude evidence "arising from . . . [the] car stop." (*See* Thompson Mot. at 5.) The court has already ruled on most of these issues. *See* Parts I.A.2.b., I.A.2.c., II.D., *supra*. The sole distinct issue Thompson raises is a motion to preclude "en masse" jail calls placed by Defendants that use profane language, particularly including the "n-word."[12]

Though the court does not deny the prejudicial effects of racial epithets, granting Defendants' motion under Rule 403 would requiring concluding that the appearances of the words are so unfairly prejudicial as to substantially outweigh the collective probative value of *all* the many statements Defendants made while invoking such terms – voluntarily, dozens of times, spread all across the record. However prejudicial such language may be, the court is not prepared to go that far. *See, e.g.*, *United States v. Al-Din*, 631 F. App'x 313, 324 (6th Cir. 2015); *United States v. Caver*, 470 F.3d 220, 241-42 (6th Cir. 2006). Defendants' concerns are better addressed with a *voir dire* question – which they have already requested from Magistrate Judge Henry, and which the court recommends she grant – or a jury instruction they may later request. *See* Fed. R. Evid. 403 advisory committee's note ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").

Thompson's motion is therefore DENIED.

---

[12] The court construes Thompson's motion as though joined by Elias as well, though he did not expressly move to do so.

### B.  Thompson's Criminal History

Thompson finally moves to preclude evidence of his past criminal history. The court has already GRANTED this motion in full. *See* Part I.C.1, *supra*.

SO ORDERED.

Dated:    Brooklyn, New York
          March 10, 2022

                                    /s/ Nicholas G. Garaufis
                                   NICHOLAS G. GARAUFIS
                                   United States District Judge